Leonard C. LACY, Appellant,

v.

UNITED STATES of America, upon the relation and for the Use of the TEN-NESSEE VALLEY AUTHORITY, Appellee.

No. 14869.

United States Court of Appeals Fifth Circuit.

Nov. 4, 1954.

Erle Pettus and Erle Pettus, Jr., Birmingham, Ala., Jackson, Rives, Pettus & Peterson, Birmingham, Ala., of counsel, for appellant.

Charles J. McCarthy, Sol. Tenn. Valley Auth., Joseph C. Swidler, General Counsel, Knoxville, Tenn., R. Lynn Seeber, Knoxville, Tenn., for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a summary judgment entered pursuant to the District Court's opinion reported in 116 F.Supp. 15. The summary judgment required appellant to remove certain structures placed by him under or in close proximity to a transmission line constructed and maintained across his property by the Tennessee Valley Authority (hereinafter called TVA), as agent for the Government, and enjoined their further maintenance within fifty feet of the center line of the transmission line.

On July 10, 1946, appellant's predecessor in title, one J. W. Turner, granted to TVA a written option to purchase a transmission line easement across the property in suit in the name of the United States. So far as the record shows, this option was never recorded. On May 8, 1947, Turner and his wife executed a grant of easement to the United States which was thereafter duly recorded in the office of the Judge of Probate of DeKalb County, Alabama, where the land lay. Meanwhile, however, on October 26, 1946, Turner had conveyed the property to appellant by warranty deed, making no mention of the outstanding option, and that deed had been recorded in said probate office on February 6, 1947. Appellee very properly concedes in brief:

> "For purposes of the motion for summary judgment we accept, as we must, the statements in appellant's affidavits that when he bought the property he had no knowledge of any rights claimed by appellee and that construction of the transmission line did not begin until several months after the appellee had acquired the property."

In Alabama the appellee's option for the purchase of the easement was entitled to record, Alabama Code 1940, Title 47, Sections 95 and 96. If properly filed for record, the option would have operated as constructive notice to subsequent purchasers. Alabama Code 1940, Title 47, Section 102. Purchasers subsequent to the execution of the option but prior to the time it is filed for record are, of course, not bound by constructive notice. Spradling v. May, 259 Ala. 10, 65 So.2d 494, 499. The option was not filed for record. Appellant denied that he had any actual notice of the option, or that the appellee had entered upon the lands at the time of his purchase, and strongly supported those denials by affidavits of himself and others. Absent actual notice or prior entry of appellee into possession of the easement, appel-

lant, as a bona fide purchaser, took title free from any claim of the appellee under its unrecorded option. Concededly, appellee has paid appellant no compensation for the easement across his property.

■ Appellee made no offer to do equity. It contends that its entry upon the property, even though wrongful, and the construction of the transmission line thereon constituted a taking of an easement and vested title to such easement in the United States, and in support of that contention it cites Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; and United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. None of those decisions goes to the length contended for by the appellee. They simply hold that when there has been an actual taking by the Government there arises an implied promise on its part to compensate the property owner. The leading case relied on, Hurley v. Kincaid, supra, 285 U.S. at page 104, 52 S.Ct. at page 269, uses the expression, " * * * the illegality, on complainant's own contention, is confined to the failure to compensate him for the taking * * *." None of the cases goes so far as to hold that, so long as the Government is guilty of that illegality, it may enjoin the property owner from the use of his own lands without itself offering to do equity especially so, when, as in this case, the land owner may be barred from an action to recover compensation by the statute of limitations, 28 U.S.C.A. § 2401.

■ Appellee further contends, however, that by standing by without protest while the transmission line was being constructed, appellant became estopped to question appellee's title to the easement, citing in support of that contention Roberts v. Northern Pacific R. Co., 158 U.S. 1, 15 S.Ct. 756, 39 L.Ed. 873; Town of Essex v. New England Tel. Co., 239 U.S. 313, 36 S.Ct. 102, 60 L.Ed. 301. To the extent that the property owner may not thereafter oust the Gov-

ernment or maintain trespass for the entry or ejectment against the Government, those cases support the appellee's position, but to that extent only. The property owner is not estopped from making use of his own lands in such manner as does not amount to an ouster of the Government from the easement. Here the structures complained of and the transmission line had both been on the property for five years before the suit was filed without resulting in an ouster of the appellee. In any event, estoppel is applied to promote the ends of justice; it can be used only as a shield to protect against injustice and not as a sword to assert a wrong of any character, as here to authorize enjoining the property owner from the use of his own lands without offering to compensate him therefor. 19 Am.Jur., Estoppel, Section 39, p. 638; New York Life Ins. Co. v. Odom, 5 Cir., 93 F.2d 641, 644; McDaniel v. United States, 5 Cir., 196 F.2d 291, 294.

■ The Government when applying for relief in a court of equity is as much bound to do equity as is a private litigant. United States v. Belt, D.C., 47 F.Supp. 239, vacated 319 U.S. 521, 63 S.Ct. 1278, 87 L.Ed. 1559, affirmed 79 U.S.App.D.C. 87, 142 F.2d 761; United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 338, 26 S.Ct. 282, 50 L.Ed. 499; Daniell v. Sherrill, Fla., 48 So.2d 736, 737, 23 L.R.A.2d 1410. "When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter." United States v. The Thekla, 266 U.S. 328, 339, 340, 45 S.Ct. 112, 113, 69 L.Ed. 313. It is true that that principle cannot be pressed to the extent of waiving the sovereign immunity to suit by way of counterclaim. United States v. Shaw, 309 U.S. 495, 502, 60 S.Ct. 659, 84 L.Ed. 888; In re Greenstreet, Inc., 7 Cir., 209 F.2d 660, 666; Oyster Shell Products Corp. v. United States, 5 Cir., 197 F.2d 1022. The Government, however, is still bound to do equity and, as a condition precedent to

relief in this case, either to agree upon and pay to the property owner such compensation as it may owe him or, failing such agreement, to file the necessary proceedings for the ascertainment of such compensation. The District Court erred in entering summary judgment for the appellee. Such judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.